**FEDERAL PUBLIC DEFENDER**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| **RICHARD COUGHLIN**<br>FEDERAL PUBLIC DEFENDER | 1002 Broad Street<br>Newark, New Jersey 07102 | **CHESTER M. KELLER**<br>FIRST ASSISTANT |

(973) 645-6347   Telephone
(973) 645-3101   Facsimile

May 5, 2020

**VIA ECF & ELECTRONIC MAIL**
Honorable Edward S. Kiel
United States District Judge
Martin Luther King Building & U.S. Courthouse
50 Walnut Street
Newark, NJ 07101

      Re: *United States v. Jose Torres*
        Crim. No. 20-10059-M (MAH)

Dear Judge Kiel:

  Mr. Torres respectfully submits this letter in lieu of a more formal request that he be released on bail, pursuant to 18 U.S.C. § 3142(c).  Section 3142 directs the release of a defendant upon the combination of those "least restrictive" conditions that will ensure his appearance in court and the safety of the community.  Both can be achieved here with Mr. Torres' release under the following strict conditions:

1. $200,000 bond secured by the equity in the home owned by L▆▆ Z▆▆▆▆;[1]
2. Three (3) co-signers;
3. Two (2) third-party custodians;
4. Home detention with GPS location monitoring;
5. Supervision by Pre-Trial Services;
6. Surrender of all passports and travel documents, with an agreement not to apply for additional travel documents;
7. No contact with any victims or any witness(es) slated to testify, upon the specific identification of these person(s) by the government;
8. Monitoring of his cell phone/computer/internet access; and
9. All other standard conditions of home detention.

  Mr. Torres's situation is one that leads to the conclusion that release, albeit it under strict conditions, is merited.  As a general matter, for defendants like Mr. Torres –

---

[1] Pre-Trial Services has already vetted the co-signers and third-party custodians Mr. Torres proposes and has found them acceptable.

citizens with strong ties to the area who have no previous contact with the criminal justice system and who are charged with a non-violent crime – detention is not presumed.  *See* § 3142(e)(2) (listing cases for which there is rebuttable presumption of detention); ECF 17 (Order of Detention does not identify this case as subject to rebuttable presumption).  *See also United States v. Traitz*, 907 F.2d 322, 325 (3d Cir. 1986) (noting that, in cases other than those described in § 3142(e)(2), "release on conditions remains the norm").  Instead, Mr. Torres' bail request was denied at his initial appearance, but he was afforded "the right to make a bail application at a later time." ECF 17.  That accords with the offense charged, essentially, conducting or engaging in prostitution across state lines.  *See* 18 U.S.C. § 2422(a) (criminalizing "persuad[ing], induc[ing], entic[ing], [or] coerc[ing]" someone to travel interstate or internationally "to engage in prostitution or engage in any sexual act for which any person can be charged with a criminal offense[.]").  "Coercion" is nowhere defined as or limited to physical coercion, meaning that this offense can be committed with violence – or without.  *Cf., e.g., United States v. Jackson,* 2015 WL 13597901 at *6 (N.D. Ind. 12/2/2015), *vacated and remanded by United State v. Jackson,* (7th Cir. 2019) (citation omitted) (court in sex-trafficking case noted that sex offenses with adult victims can be committed by means of fraud, manipulation or simply offering money, rather than by physical violence).

      The government must now prove "by clear and convincing evidence, that no condition or combination [of conditions] will assure [the defendant's continued appearance or] the safety of the community."  *Traitz*, 807 F.2d at 325 (citing 18 U.S.C. § 3142(f)).  The government has not done so at this juncture.  The government argues, first, that Mr. Torres presents an untenable flight risk.  So far, the government has only pointed to Mr. Torres's travel within the United States and trips to El Salvador, his birthplace.  Mr. Torres, however, is an American citizen and has been one for decades.  The fact that he is an immigrant, as are so many Americans, with ties and travel abroad, cannot and should not legitimately be held against him.  It is also legally of no moment.  *See* § 3142(g) (birthplace is not among factors to be considered).

      Instead, the Court can place restrictive conditions to address his domestic and international travel.  *See generally* § 3142(c)(B)(xiv) (court may impose any reasonably

2

necessary conditions). Mr. Torres will turn in his American and Salvadoran passports, along with all copies, to Pre-Trial Services. *See* § 3142(c)(B)(iv). He can also be subject to real-time GPS electronic monitoring, so that Pre-Trial Services is able to confirm that he is, in fact, at home at all times. *See id.* Indeed, Mr. Torres will be locked down in the home, *see id.*, unable to leave the home or even to be more than 100 feet from the location-monitoring device attached to the landline. He will be far more constrained than most people on bail and even more so than people currently sheltering in place.

And while these restrictions are designed to keep Mr. Torres within a 100ft. radius of that landline, the GPS monitoring bracelet does even more. With this technology, Pre-Trial Services can track Mr. Torres in real time. And were he to take the bewildering step of violating his conditions after being released following almost three months in local custody, the GPS information can be used to determine his precise location. In short, his whereabouts can be tracked at all times of the day or night.

Mr. Torres is a naturalized United States citizen who has lived in this country, and in New Jersey, for over three decades. He arrived in 1986 and has lived in New Jersey since 1987. He has worked at the same company for several years, he went to college in New Jersey, and he has only worked in the NYC metro area. He also has two children who are American citizens. *See* § 3142(g)(A) (length of residence in community and ties to community are relevant factors). His ties to the United States, and to New Jersey specifically, are strong. He also has no criminal history, nor does he have any history of drug or alcohol abuse. *See id.* (criminal and substance abuse history are relevant).

In addition to these factors, Mr. Torres' family and close friends have put themselves on the line for him, and he has no intention of letting them down or placing them or their assets in any risk whatsoever. Friends who own a business, the D▮▮▮▮▮s, have offered to be co-signers, as have L▮▮ & K▮▮▮ Z▮▮▮, all of whom have been approved by Pre-Trial Services. In addition, L▮▮ Z▮▮a believes in Mr. Torres so strongly that he is willing to post his home and he and his wife, M▮▮▮▮ M▮▮▮▮▮, are both willing to act as third-party custodians for this Court. This level of support from all sides evinces the strong faith these people have for Mr. Torres, and it speaks volumes.

Mr. Torres's actions and this support are not those of someone wishing to hide from the government, much less someone who intends to flee the jurisdiction. Instead,

they indicate, rather forcefully, that Mr. Torres intends to comply with the directives of this Court. Nothing more is necessary to assure Mr. Torres's appearance for trial.

Similarly, the proposed bail conditions will protect the public. The government asserts that Mr. Torres is a danger to the public, purportedly because of the violent acts alleged in the complaint. But this position overlooks critical facts. First, there is no verifiable information in Mr. Torres' history to suggest that he is a danger to the public. He has no criminal record. There are no restraining orders or instances of domestic violence. There is nothing to show any history of intimidation, much less violence. Tellingly, the government did not charge assault, although it alleges that Mr. Torres committed assaults. *See* Complaint, Attachment B, ¶¶ 1-3. It did not charge any other actions, although it supposedly has located "several of [Mr.] Torres' victims." *Id.*, ¶ 2. It did not charge rape, but made sure to include that highly prejudicial claim in the first paragraph of the of the substance of the complaint. *See id.*, ¶ 1. In other words, the government is alleging that society cannot be safe with Mr. Torres free because of these heinous acts he supposedly committed, but has offered no verifiable evidence.

Second, as noted at the initial appearance, the government could have acted sooner, and should have acted sooner, if it truly believed that the public were in danger with Mr. Torres free. It has alleged two instances of conduct that occurred four years apart, in 2015 and 2019. But while the attachment to the complaint alleges aggressive behavior, it is worth noting that, the government's outrage at his alleged conduct aside, no charges were brought until now, despite the allegation that he committed an act in 2015, despite the fact that the government had access to the website for sex workers he allegedly used, and despite the government's statement that news about him and his purported dangerousness were the topic of conversations on this site.[2] The government has provided no concrete information to justify the delay in bringing these charges, but offered instead its insight that sex workers are not trusting of law enforcement, making these crimes are difficult to prosecute. But that the prosecution would be very challenging neither addresses nor changes the fact that the government could have charged Mr. Torres earlier instead of waiting to charge an alleged offense from 2019.

---

[2] By way of example, cases stemming from this particular website, backpage.com, had begun at least by 2012 and had reached the appeals court level by 2015. *See, e.g., United States v. Devault,* 608 Fed. Appx. 386 (6th Cir. 2015) (memorandum opinion).

4

Beyond the complaint, the government can point to nothing that demonstrates a concrete, identified risk to the public. Again, any concern that Mr. Torres will be at large and able to wreak havoc upon the general populace is addressed and resolved with the home detention and location monitoring proposed by Mr. Torres. He will not be able to leave the home to endanger anyone, and his phone/internet access will be monitored to ensure that he is not engaging in the type of conduct alleged. Mr. Torres also reminds the Court that despite his arrest almost three months ago on these charges, he has yet to see one scintilla of evidence, much less proof, of these allegations. While it is frustrating for Mr. Torres not to be able to answer this evidence, it is also extremely prejudicial to his ability to bring this bail motion. For instance, Mr. Torres recalls the government offering a wealth of "proof" and evidence to the Court at the initial appearance (such as about the electronics seized, Mr. Torres' travel, etc.), but he has seen *none* of this evidence, and is once again at the government's mercy for these allegations; he will only be able to stand up in court and try to refute them with no records or documents, placing him at a distinct disadvantage.[3]

Once again, the government will seek to argue that he should remain in custody on the basis of this undisclosed "evidence" while simultaneously denying Mr. Torres the ability to undercut it. Rather than have a repeat of the first bail hearing, at which the government's refusal to provide any information to Mr. Torres worked to his disadvantage, he asks that the Court not consider any information that the government has not provided to Mr. Torres.[4] Otherwise, he enters this hearing hamstrung by the

---

[3] Indeed, Mr. Torres opposed the government's second request to delay the preliminary hearing and indictment because, *inter alia*, he had received no discovery and would not be entitled to any discovery or to litigate the discovery process until he is indicted. Only at that hearing (2 months after Mr. Torres' arrest) did the government consent to disclose some discovery, but it still refused to adhere to the dictates of Fed.R.Crim.P. 16. In representing to the Court that it would provide "some" discovery, the government, however, failed to inform the Court (or Mr. Torres) that before it provides a single document in discovery, it would require a protective order that *prohibits* the dissemination of certain materials to Mr. Torres himself, which itself may well require litigation to resolve – but because Rule 16's protections do not apply after indictment, he has no vehicle to do that, so he could remain without discovery for some unknown period of time, unable to defend his case or clear his name.
[4] Alternatively, Mr. Torres requests that if the government is going to rely on information outside the bail report (his history and characteristics, his record, etc.), it be required to provide it to Mr. Torres one full business day in advance of the bail hearing.

5

very rules of discovery that are supposed to help him prepare his defense in a fair and just manner under the constitution.

All indications are that Mr. Torres has every intention to remain in New Jersey to face the charges. The release statute does not direct that every possible condition available be put in place, only the least restrictive combination that will ensure the twin goals of bail be imposed, but Mr. Torres is nonetheless agreeing to be placed on the most restrictive bail conditions available. He will be on home detention with GPS LM, and his passports will be confiscated. In other words, he has nowhere to go and no way to get there. And if that were in some way to change, he and his co-signers will be answerable to the government for $200,000 and the Z▮▮▮▮ will lose their home, an unacceptable option for Mr. Torres. Mr. Torres would also forfeit any right to return to the US, his adopted country and home to him and his children, as a free man. His liberty in the country is not something Mr. Torres is willing to risk.

Mr. Torres therefore respectfully requests that the Court grant him release on bond under the stringent conditions proposed. Absent this modification, Mr. Torres would necessarily remain custody, a result that is contrary to the spirit of § 3142(c) and unwarranted by the evidence presented so far. If the Court is inclined once again to reject Mr. Torres' request for bail, he asks that the Court issue its findings in a written detention order. *See United States v. Mantecon-Zayas*, 949 F.2d 548, 551 (1st Cir. 1991) (requiring findings by court in such situations to explain why disputed condition is indispensable; noting findings help ensure proper operation of detention, aid in focusing appellate scrutiny, and that legislative history suggests that written finding requirement § 3142(i) must be satisfied) (citation omitted).

Mr. Torres thanks the Court for its consideration of his request.

                                        Respectfully,
                                        /s/ Lisa M. Mack

cc:    Emma Spiro – *via Electronic Mail*
        Jose Torres – *via US Mails*

---

Only with the ability to review this evidence can Mr. Torres reasonably be expected to counter it.