

**U.S. Department of Justice**
*United States Attorney*
*District of New Jersey*

---

*Emma Spiro*
*Assistant United States Attorney*

970 Broad Street, Suite 700
Newark, New Jersey 07102
Direct Dial: (973) 645-2746

May 7, 2020

<u>Via E-Mail and ECF</u>

The Honorable Edward S. Kiel
United States Magistrate Judge
Martin Luther King, Jr. Federal
Building and Courthouse
50 Walnut Street
Newark, NJ 07102

        Re:   <u>United States v. Jose Torres</u>
                  Mag. No. 20-10059

Dear Judge Kiel:

      The United States respectfully submits this letter brief in opposition to Jose Torres' ("Torres" or "Defendant") motion that he be released on bail. *See* D.E. 25. In that submission, Torres seeks to be released to the third party custody of two individuals, with home detention and electronic monitoring. Based on representations to pretrial services, it appears that Torres has a tenuous relationship, at best, with his proposed third party custodians.[1] From the outset, the Government sought detention in this case in light of its view of the seriousness of the charges as well as Torres' related conduct during this timeframe, and his risk of flight. The Government submits that Defendant's renewed application does not address this Court's concerns and prior findings that there are no conditions or combination of conditions that could assure the safety of the community or Torres' appearance at future proceedings.

---

[1] While pretrial services has found the third party custodians suitable, they have determined that there are no conditions or combination of conditions that could assure the safety of the community or Torres' appearance at future proceedings.

1

<u>Relevant Facts</u>

The Government alleges that, since at least 2015, Torres has knowingly persuaded, induced, and enticed female commercial sex workers to travel in interstate or foreign commerce to engage in prostitution and other sexual activities by use of force, violence, and threats. As part of this conduct, Torres trolls websites seeking commercial sex workers who he subsequently convinces to travel to New Jersey to engage in prostitution with him, on promises of large sums of payment. Once the women arrive, Torres sexually and physically assaults them, and refuses to pay them.

At this point in the investigation, the Government has charged Torres with two instances of this conduct. First, in May of 2015, Torres contacted a commercial sex worker ("Victim-1") and induced her to travel from New York to New Jersey on promises of large sums of payment. However, she eventually became uncomfortable with Torres, and when she asked to leave, Torres refused and continued to force Victim-1 to perform unwanted sexual activity, including slapping Victim-1 in the face and choking her.

Similarly, in October of 2019, Torres lured yet another commercial sex worker ("Victim-2") to travel from Canada to New Jersey, promising her tens of thousands of dollars in exchange for engaging in prostitution. Yet again, Victim-2 became uncomfortable with Torres, and yet again Torres used both physical and mental tactics to keep Victim-2 in the room – he lied and told her he was a police officer, and forced her to engage in rough sexual intercourse, which included slapping her in the face, choking her, and calling her derogatory names.

These incidents cannot be considered in a vacuum. Rather, the stories of these victims mimic dozens of stories that the Government has heard from scared women – women who are terrified to come forward as they themselves are engaging in criminal conduct and often not United States citizens. Moreover, the victim accounts noted above and the widespread nature of Defendant's conduct is corroborated by significant evidence, including phone records, credit card bills, bank statements and hotel stays. This evidence is discussed in more detail below.

On February 13, 2020, Torres was charged via criminal complaint with two counts of coercion and enticement in violation of Title 18, United States Code, Section 2422(a). On February 14, 2020, Torres was arrested on these charges in the District of Massachusetts and consented to detention. On March 17, 2020, this Court held a bail hearing and determined that there were no conditions or combination of conditions that could assure the appearance of the Defendant or the safety of the community and therefore detained the Defendant. D.E. 17.

<u>Argument</u>

Pre-trial release and detention is governed by the Bail Reform Act of 1984, codified in 18 U.S.C. §§ 3141-56. Section 3142(c), which governs the release on conditions of a defendant pending trial, directs this Court to release a defendant "subject to the least restrictive . . . condition or combination of conditions" that the Court "determines will reasonably assure the appearance of the person as required and the safety of any other person and the community." *Id.* § 3142(c)(B). Section 3142(g), in turn, provides several factors that this Court must consider in making that determination, including "the nature and circumstances of the offense charged," "the weight of the evidence against the person," and "the history and characteristics" of the defendant.[2] As set forth below, each of these conditions weighs against granting the Defendant's release.

Further, this Court already considered these factors at the March 17, 2020 bail hearing and determined that there were no conditions or combination of conditions that would secure Torres' appearance and the safety of the community. At that hearing, the Court expressed concern for the community, including the vulnerable population that Torres has repeatedly preyed on. Likewise, this Court expressed legitimate concerns about pretrial services' ability to monitor Mr. Torres, given the Government's proffered evidence regarding the extent of Mr. Torres' phone and internet activity as a means of victimizing additional women. Because these concerns remain well-founded and because the Defendant's proposal does not resolve such concerns, this Court should deny Torres' request to be released on bond.

*Discovery and Proceeding by Proffer*

"Detention hearings are an informal proceeding, and the evidence presented is not governed by the Federal Rules of Evidence." *United States v. Duncan*, 897 F. Supp. 688, 690 (N.D.N.Y. 1988); 18 U.S.C. § 3142(f)(2). The government may proceed in a detention hearing by way of proffer. *United States v. Smith*, 79 F.3d 1208, 1209-10 (D.C.Cir.1996) (noting that "[e]very circuit to have considered the matter . . . [has] permitted the Government to proceed [by proffer]). The rationale for permitting detention hearings to proceed by way of proffer is that such hearings are "neither a discovery device for the defense nor a trial on the merits." *Smith*, 79 F.3d at 1210. "The process that is due is only that which is required by and proportionate to the purpose of the proceeding." *Id.* That purpose includes neither a reprise of all the evidence presented before the grand jury, *United States v. Suppa*, 799 F.2d 115, 119 (3d Cir. 1986), nor the right to confront non-testifying government witnesses, *United States v. Accetturo*, 783 F.2d 382, 388-89 (3d Cir.

---

[2] In cases such as this where the Court has already ruled on a motion for release, § 3142(f)(2) establishes that "the hearing may be reopened . . . at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community."

3

1986). "A right to require the government to produce its witnesses against [a defendant] would complicate the hearing to a degree out of proportion to the liberty interest at stake - viz. the interest in remaining free until trial, for what is by statute a period of limited duration." *Smith*, 79 F.3d at 1210; *see also* Speedy Trial Act, 18 U.S.C. § 3161, *et seq.*

As the case law makes clear, and as this Court acknowledged at the bail hearing on March 17, 2020, the Government may proceed, and this Court may accept, proffered evidence from the Government in support of its representations at a bail hearing. *See* 18 U.S.C. 3141(f). Nonetheless, and despite being under no obligation to do so, the Government has attempted multiple times to produce discovery in this matter. The Government told both this Court and Defense Counsel at a hearing on April 24, 2020, that it was in the process of drafting a protective order for Defense counsel to review. *See also* Government's Reply Brief, D.E. 21, at 1 ("[T]he Government intends to prepare pre-indictment discovery to send to the Defendant and is currently drafting a protective order for Defense counsel's review."). A mere two days after the hearing, on Sunday, April 26, 2020, the Government sent defense counsel a protective order for review. *See* Counsel Emails, Exhibit 1. When the Government did not hear back from defense counsel for a period of three days, it again sent a reminder email on Wednesday April 29, 2020, following up on the outstanding protective order. Ex. 1. The following day, Thursday April 30, 2020, defense counsel responded, noting that she was uncertain whether she would remain in this matter as counsel to Torres, because presumably if she were not his attorney, she did not want to enter a protective order on his behalf. Ex. 1. Not once in this email exchange did defense counsel indicate any objection to the protective order itself.

Due to the sensitive nature of the charges in this case as well as the substantial amount of victim and witness information in the Government's discovery, the Government submits that a protective order is necessary in this case. If counsel chooses to object to the Government's proposed protective order, it plans to file a motion requesting that the Court enter the order over Defendant's objection. However, to date, defense counsel has not indicated that it has any objection to the proposed protective order. Nonetheless, the Government intends to provide discovery to defense counsel that it intends to rely on in the bail hearing and that does not contain any victim or witness information. The Government endeavors to provide this limited discovery by this Friday, May 8, 2020.[3]

*The Defendant Poses a Flight Risk*

---

[3] The Government wants to make it abundantly clear that defense counsel is not entitled to this discovery in advance of the bail hearing and that the Court can and should consider all evidence proffered by the government at the hearing, whether defense counsel has access to it or not. The Federal Rules and case law are clear on this. *See, e.g.,* 18 U.S.C. 3141(f); *Smith*, 79 F.3d at 1210.

4

The Defendant, a native of El Salvador, poses a serious risk of flight. While defense counsel accurately points out that Torres has lived in New Jersey for three decades, this overlooks his very real and extensive connections to South America. Torres' travel was extensive prior to his arrest: he traveled internationally at least a dozen times in the past three years. This travel includes at least six trips to Colombia and another four trips to El Salvador. Moreover, Torres still has family in South America. His biological mother remains living in El Salvador, and he has reached out to El Salvador at least a dozen times since being incarcerated. The few calls the Government has been able to listen to[4] make clear that Torres is seeking help from his family in El Salvador to provide financial resources for his bail, as well as help him to convince various "friends" in the United States to put up money, homes and other resources in order to support his release from prison. Further, Torres' consulting company, JTBoss, is based out of New York and Latin America. In fact, JTBoss' base of operations is in Colombia. Thus, the Defendant has real and present connections to South America.

Meanwhile, the Defendant has very few remaining ties to New Jersey. It appears that the Defendant is estranged from his ex-wife and two children, who reside in Illinois and have not offered their support in Defendant's release. Defendant's longtime employer has removed his profile from the company's website, and there is no indication that Torres will have a job there upon release. In fact, Defendant's very few remaining friends and family in New Jersey is demonstrated by the individuals he has put forth as his third party custodians. His relationship with them is attenuated, at best. Defendant has informed pretrial services that his relationship with the proposed third party custodian – ▇▇▇▇▇▇▇ – is that Mr. ▇▇▇▇ has a cousin who is married to the Defendant's brother. Moreover, it appears from the Defendant's jail calls that he has only met the proposed custodians a few times.[5] Therefore, these individuals barely know the Defendant and will likely be unable to effectively monitor the Defendant.

Further, Defendant has demonstrated by his conduct that he has, and is willing to be, purposefully deceptive. He has lied about his address on his tax returns, to federal agents, and to the department of motor vehicles. In fact, law enforcement has confirmed that Torres has **never** lived at the address he uses on his license and for his tax returns. Additionally, Defendant has been repeatedly deceptive to the women he victimizes. He has used numerous aliases when

---

[4] The Government is still awaiting Spanish translation for many of the calls. Additionally, the Government intends to produce all jail calls to defense counsel as soon as possible. Since the calls cannot be sent electronically, it has been difficult to ascertain them during the current situation where law enforcement and government personnel are largely working from home.

[5] Pretrial services intends to request that the proposed third party custodians participate in the bail hearing. The Government joins in this request.

communicating with these women and to the hotels at which he stays.[6] In fact, Torres is known by at least five names to various victims and hotel staff, including: (1) Jose Alvarez; (2) John Alvarez; (3) Guillermo Valencia; and (4) Guillermo Molina. And finally, the defendant is deceptive with his finances – he has repeatedly scammed numerous women out of money he promised them, including the two victims charged in this case.

Lastly – and importantly – Defendant's conduct suggests he would be impossible to track and adequately monitor if released. The Government's investigation revealed numerous "burner phones" that Torres used to engage in his illegal conduct. In fact, on the day of Defendant's arrest, he was found with four cellular phones and three laptops. Moreover, a subpoena to just a single provider – T-Mobile – indicates that the Defendant had at least **eighty (80)** different telephone numbers in the calendar year prior to his arrest.[7] There is no telling how many additional phones the Defendant has access to or will be able to obtain access to if released.

The Defendant has never served any significant time in prison. Now, facing 20 years on each count – the Defendant has every incentive to run. His deep connections to South America and lack of ties to New Jersey make it clear that Defendant poses a significant risk of flight.

*The Defendant Remains a Threat to the Community*

The nature and circumstances of the offense charged overwhelmingly weigh against Defendant's release. While defense counsel claims that the charges themselves are non-violent – this is simply untrue. The "nature and circumstances" of the defendant's conduct involve just that – the circumstances surrounding defendant's conduct and arrest. And the circumstances of the charged conduct is violent – it includes allegations of the assault and rape of an extremely vulnerable population who rarely seek help from law enforcement.[8] The victims in this case were so traumatized by the Defendant's abuse, they made the difficult decision to reach out to law enforcement to seek help.

While the Government contends that the Defendant's violence towards the two charged victims is sufficient to warrant his detention, the evidence clearly indicates that Torres' conduct is far more expansive. Law enforcement has spoken to at least ten women who are victims of Torres' conduct. Additionally, dozens of

---

[6] The Government has provided the Defendant with subpoena returns from numerous hotels.

[7] The Government has produced T-Mobile's subpoena return to Defendant.

[8] Defense counsel faults the government for not charging rape and assault as substantive offenses, as well as not bringing the present charges against the Defendant sooner. However, the Government's charging decisions is not a consideration that should factor into an analysis of how dangerous the defendant currently is or whether he should remain detained.

online reports depict the Defendant as a violent sexual predator who leaves wakes of victims assaulted, battered and ripped off monetarily. From these witness and victim interviews and reports, it is clear that Defendant does not solely use violence but also mental intimidation to force his victims to remain with him and scare them from calling the police. For example, he claims that he has friends high up in the judiciary, or that he himself is a police officer, and thus threatens the victims with deportation and/or arrest.

Moreover, Defendant's nature and characteristics support detention. While the Defendant himself has no prior convictions, the Defendant's history and characteristics involve significant evidence of crimes against a population that is scared to come forward. It is the vulnerable population the Defendant has spent at least the past five years preying on that is the precise reason he has no criminal history.[9] As Your Honor acknowledged during the last bail hearing, this population consists of women themselves engaged in illegal activity and often not United States citizens. They are themselves fearful of prosecution, deportation and more.

There is also no indication that Defendant had stopped, or intended to stop this conduct at the time of his arrest. In fact, on the very day of Defendant's arrest, he was engaging in this very conduct when law enforcement found two commercial sex workers in his hotel room in the District of Massachusetts. Cell phone records from Torres' most recent burner phone also indicate how expansive his conduct was: in less than four days in February, Torres used this single phone to contact at least 96 women associated with commercial sex worker profiles. With these women, he had at least 778 contacts with them by telephone call or text message.[10] These communications occur during the day and night, including work hours. Thus, Torres' conduct as recently as the week before and up until the day of his arrest suggest that his actions would continue. Moreover, if not for his arrest, Torres would have victimized countless additional women.

As further evidence of how widespread Torres' conduct was, subpoena returns from hotels and credit card companies show that Torres had over 108 single night hotel stays in the calendar year prior to his arrest.[11] 98 of these single

---

[9] Additionally, law enforcement is aware of at least 5 police reports that have been filed against the Defendant. For example, Torres was arrested by the Los Angeles County Police Department in June of 2016 for attempted rape. The fact that none of these resulted in convictions is again a product of the population of the victims, not the Defendant's good character or innocence.

[10] The Cellebrite report from this phone is quite large due to the large volume of contacts, therefore it cannot be sent except by a thumb drive. There is also significant sensitive victim information contained on this report. After the entry of a protective order, the Government will endeavor to produce a redacted form of this report to defense counsel.

[11] A vast majority of these records have been produced to defense counsel.

night stays were within New Jersey.  Torres' employer confirmed that they do not reimburse for hotel stays within New Jersey for business-related travel.  Therefore, these single night stays fairly represent nights where the defendant was engaged with a commercial sex worker.

      The strength of the evidence thus shows the how vast the Defendant's offense conduct spans and what a threat he poses to any female, especially commercial sex workers, if released.  The Defendant's proposed conditions do not alleviate this concern – an elderly couple with a remote connection to Torres[12] will not protect the community or assure Torres' appearance in court.  This Court previously determined that the safety of the community and Torres' appearance could only be assured by the Defendant's detention.  That remains the case today.  For this reason, and for those set forth above, the Government respectfully requests that Torres' motion for bail be denied.

                           Very truly yours,

                           CRAIG CARPENITO
                         United States Attorney

                         By: Emma Spiro
                         Assistant U.S. Attorney

cc:    Lisa Mack, Esq.

---

[12] The Government believes that Torres' significant internet activity requires an individual who is knowledgeable about the internet to adequately monitor his actions.